

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ORANGEBURG DIVISION**

| | | |
|---|---|---|
| ALONZO E. ADAMS, *as Personal Representative of the Estate of Phillip Matthew Adams*, | § § § § § § § § § § § | |
| Plaintiff, | | |
| vs. | | Civil Action No.: 5:24-2734-MGL |
| SOUTH CAROLINA STATE UNIVERSITY, NATIONAL FOOTBALL LEAGUE, and NFL PROPERTIES, LLC, | | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO REMAND**
**AND DEEMING AS MOOT DEFENDANTS' MOTIONS TO DISMISS**

**I.    INTRODUCTION**

Plaintiff Alonzo E. Adams (Adams), as Personal Representative of the Estate of Phillip Matthew Adams (Decedent), brought this civil action against Defendants National Football League (the NFL) and NFL Properties, LLC (collectively, NFL Defendants), as well as South Carolina State University (SCSU) (collectively, Defendants) in the Orangeburg County Court of Common Pleas, alleging negligence and wrongful death.  NFL Defendants, with SCSU's consent, removed the case to this Court, claiming the Court has federal question jurisdiction over the matter under 28 U.S.C. § 1331 and supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367.

Pending before the Court is Adams's motion to remand. Having considered the motion, the response, the reply, the notice of removal, the record, and the applicable law, it is the judgment of the Court Adams's motion to remand will be granted. Consequently, Defendants' motions to dismiss will necessarily be deemed as moot.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

From 2006 to 2009, Decedent played football for SCSU. He then went on to play for several teams in the NFL. Specifically, Decedent played "for the San Francisco 49ers in 2010, the New England Patriots in 2011, the Seattle Seahawks in 2011, the Oakland Raiders [from 2012 to 2013], the Seattle Seahawks in 2014, the New York Jets in 2014 and the Atlanta Falcons in 2015." Amended Complaint ¶ 7. According to Adams, Decedent sustained head trauma during his tenure with each of these teams.

"[O]n or about April 8, 2021, [Decedent] died of a self-inflicted gunshot wound" at the age of thirty-two. *Id.* ¶ 8. Nearly six months after his death, he was diagnosed with "Chronic Traumatic Encephalopathy (CTE), Stage II." *Id.* ¶ 9.

Adams subsequently brought this action in state court, seeking damages on behalf of Decedent's estate and minor son. As is relevant here, Adams alleges NFL Defendants "had a duty to exercise due care to avoid foreseeable damage or injury." *Id.* ¶ 5. He contends NFL Defendants negligently breached this duty by

> engaging in activity which caused concussion and head trauma to [Decedent] and latent neurological damage, illnesses, and decline that arise from those head impacts[;] . . . . engaging in activity detrimental to the safety of [Decedent] when [they] knew or should have known such conduct would result in harm to [Decedent; and] . . . . failing to exercise that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances.

*Id.* ¶ 11(a)–(d).

2

NFL Defendants removed the case to this Court, contending Adams's claims are completely preempted by section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186. Adams filed this motion to remand, after which NFL Defendants filed a response in opposition, and Adams filed a reply in support.

The Court, having been briefed on the relevant issues, is now prepared to adjudicate the motion.

### III.    STANDARD OF REVIEW

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

The Court is "obliged to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (quoting *Mulcahey*, 29 F.3d at 151). "Therefore, 'if federal jurisdiction is doubtful, a remand [to state court] is necessary.'" *Id.* (alteration marks omitted) (quoting *Mulcahey*, 29 F.3d at 151). Further, any ambiguity should be construed against the removing party. *Her Majesty The Queen in Right of the Province of Ont. v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989).

When considering a motion to remand, the Court accepts as true all relevant allegations in the complaint and construes all factual ambiguities in favor of the plaintiff. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1163–64 (5th Cir. 1988).

For the Court to have federal question jurisdiction over a claim, "a right or immunity created by the Constitution or laws of the United States must be an [essential] element" of the claim. *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13 (1936).

The Fourth Circuit "has consistently held . . . the presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides . . . federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint without consideration of any potential defenses." *Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 450 (4th Cir. 2004) (quoting *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207 (2004)).

In examining the complaint, the Court "must first discern whether federal or state law creates the cause of action." *Mulcahey*, 29 F.3d at 151. The plaintiff, as the master of his complaint, may avoid federal jurisdiction by relying exclusively upon state law. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). If the claims presented in the complaint are created by state law, the Court will generally remand unless the claim "necessarily depends on resolution of a *substantial* question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 28 (1983).

Under the "substantial federal question doctrine," the Court must determine whether the case falls into the "small class of 'cases in which a well-pleaded complaint establishes . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law[] in that federal law is a necessary element of one of the well-pleaded . . . claims.'" *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988)). If it does, removal is proper. *Mulcahey*, 29 F.3d at 154.

Complete preemption is a niche within the substantial federal question doctrine, which occurs "when Congress 'so completely preempts a particular area that any civil complaint raising

4

the select group of claims is necessarily federal in character.'" *Pinney v. Nokia, Inc.*, 402 F.3d 430, 449 (4th Cir. 2005) (alteration marks omitted) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987)). It is appropriate only "if the subject matter of a putative state law claim has been totally subsumed by federal law[] such that state law cannot even treat on the subject matter[.]" *Lontz v. Tharp*, 413 F.3d 435, 439–40 (4th Cir. 2005).

### IV.  DISCUSSION AND ANALYSIS

First, some background: as an initial matter, each player in the NFL is subject to labor agreements called collective bargaining agreements (CBAs). CBAs "are the product of exhaustive arm's-length negotiations" between the NFL Management Council and the NFL Players' Association. NFL Defendants' Response at 5. They "cover a broad range of subjects affecting the terms and conditions of employment for NFL players." *Id.*

According to NFL Defendants, throughout Decedent's career, the 2006 and 2011 CBAs governed his relationship with NFL Defendants. NFL Defendants' Notice of Removal at 3. They further state, within the 2006 and 2011 CBAs are "Player Medical Care Provisions" (medical provisions), which "contain[] detailed provisions that allocate responsibilities among the players, Member Clubs, Club medical staff, and the league relating to assessment, diagnosis, and treatment of, and information related to, player injures." NFL Defendants' Response at 6. NFL Defendants' removal is based on their argument Adams's claims are preempted by section 301 of the LMRA because they "arise under" and "substantially depend on the interpretation" of rights created by the CBAs. *Id.* at 13–23.

In 2012, long after the 2006 and 2011 CBAs were negotiated, NFL Defendants created the Spotter Program, primarily to "observe play on the field and monitor the broadcast feed of [a

particular] game to identify players who may potentially be injured on a play, with an emphasis on concussions." Adams's Motion to Remand at 5.

*****

"Section 301 [of the LMRA] governs claims founded directly on rights created by [a CBA] and also claims 'substantially dependent on analysis of a [CBA].'" *Caterpillar*, 482 U.S. at 392 (1987) (citing *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859 (1987)). If resolution of a state law claim is "substantially dependent" on an analysis of a CBA provision or "inextricably intertwined" with a CBA, the claim is completely preempted by section 301. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

"When the meaning of contract terms is not the subject of dispute, the bare fact . . . a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). Distinctly, even complete preemption under section 301 "does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint." *Caterpillar*, 482 U.S. at 398–99. Thus, courts must be careful to ensure interpretation of a CBA is required by the plaintiff's complaint, rather than a defense injected by the defendant in its answer. *Id.* at 399.

Turning now to Adams's motion, he kicks it off by arguing his negligence claim may be adjudicated solely under state law, independently of the CBAs' provisions. He reasons NFL Defendants "had a duty to exercise due care to avoid foreseeable damage or injury." Amended Complaint ¶ 5. And, according to Adams, this duty is "owed to the public as a whole" and is therefore undefined by, unrelated to, and substantially independent of any analysis of the CBAs' provisions. Adams's Reply at 2, 6. Adams further articulates the Court's determination of his claims "will require neither the application nor [the] interpretation of the CBAs' medical

6

provisions . . . [because] the negligence of [NFL] Defendants resulted in no medical care being provided to [Decedent]." *Id.* at 2–3 (emphasis omitted).

Adams next maintains any duty created by the Spotter Program is "totally separate from any [duty outlined in the CBAs[,]" and the CBAs "do not create any duty undertaken by NFL Defendants" as a result of the Program. Adams's Motion to Remand at 5–6. Critically, he emphasizes "the [Program was] adopted in 2012, subsequent to and wholly independent of the 2006 and 2011 CBAs." *Id.* at 5.

NFL Defendants attempt to tackle these arguments in their nearly forty-page memorandum, contending Adams's claims are preempted by section 301 of the LMRA because they are "premised on rights and obligations that arise under the CBAs." NFL Defendants' Response at 23. They further argue the "CBAs expressly define the relationship among the NFL, the Member Clubs, the players, and their union." *Id.* And, thus, according to NFL Defendants, the claims are preempted because NFL Defendants "plainly [do] not owe a duty to safeguard the health and safety of 'every person in society.'" *Id.* (quoting *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 371 (1990)).

Moreover, NFL Defendants assert Adams's claims are completely preempted, as adjudicating the claims would "substantially depend upon interpretation of the [CBAs]." NFL Defendants' Response at 13. They cite multiple provisions in the CBAs, including Player Medical Care Provisions, Rule-Making and Player Safety Rule Provisions, Grievance Procedures, and Career-Ending Injury Protection and Player Benefits Provisions, asserting a court could decide Adams's claims only with substantial dependance on these provisions.

But Adams, as the master of his complaint, has tailored all his claims to rely solely on South Carolina law. His claims relating to the Spotter Program stand independent of the CBAs,

7

as the Program was "voluntarily undertaken without direction from the CBAs and initiated in 2012, after the 2006 and 2011 CBAs." Adams's Reply at 8. Indeed, Adams must prove any alleged injury to Decedent by expert medical opinions rather than through a substantial analysis of the CBAs' provisions.

Adams's claims are neither "substantially dependent" nor "inextricably intertwined" with the CBAs. *Allis-Chalmers*, 471 U.S. at 220. As Adams explains, "[f]ailure to keep a proper lookout is not a claim covered by the CBA[s.]" Adams's Reply at 6. Rather, "[t]he duty to watch [for potential injury]—and the breach thereof—is created . . . and will be determined by South Carolina common law, not under any duty created by any CBA[s] [provision]." *Id.* Here, "[t]his common law duty of due care includes the duty to avoid damage or injury to foreseeable plaintiffs." *Dorell v. S.C. Dep't of Transp.*, 361 S.C. 312, 318, 605 S.E.2d 12, 15 (2004). And, as Adams correctly contends, "[t]his duty . . . is a duty owed to the public as a whole." Adams's Reply at 2. Although a court could potentially consult various provisions in the CBAs, the provisions are just unnecessary for a court to adequately analyze Adams's negligence and wrongful death claims.

In cases such as this, "the question in preemption analysis is not whether the source of a cause of action is state law[] but whether resolution of the cause of action requires interpretation of a collective bargaining agreement." *McCormick v. AT&T Techs., Inc.*, 934 F.2d 531, 535 (4th Cir. 1991). And, here, the Court is unpersuaded Adams's claims require elucidation of the CBAs' provisions.

Instead, the provisions are happenstance to his claims. The mere fact NFL Defendants and Decedent were parties to the CBAs fails to subject Adams's claims to complete preemption. As the claims neither directly arise from nor specifically require interpretation of the CBAs, they are independent of the CBAs for purposes of complete preemption. *Lingle*, 486 U.S. at 400.

As an aside, NFL Defendants aver any allegations set forth by Adams for the first time in his motion to remand are improper and irrelevant. NFL Defendants' Response at 25. But, this is incorrect. NFL Defendants specifically challenge Adams's reference to the Spotter Program. However, whether a case is removable is determined from the entire record. *See Harmon v. OKI Sys.*, 115 F.3d 477, 479–80 (7th Cir. 1997) ("[S]hould a court really be barred from considering reliable evidence . . . merely because the evidence was not in the record on the date of removal? The test should simply be whether the evidence sheds light on the situation which existed when the case was removed."). As such, courts may generally look outside the complaint when considering a motion to remand.

To bolster NFL Defendants' claims, they target a litany of cases in which courts have found CBA provisions concerning equipment, injuries, and player health and safety establish a duty of care and thus completely preempt the plaintiffs' claims. For example, they cite *Miles v. National Football League*, where the court held a negligence claim was preempted because it could "only be ascertained by interpreting [CBA provisions]" regarding equipment, injuries, and player health and safety, all of which defined the duty of care. 641 F. Supp. 3d 91, 95 (D.N.J. 2022). In this case, however, Adams's claims arise under and may be adjudicated solely by, South Carolina law.

NFL Defendants also point to *Givens v. Tennessee Football, Inc.*, in which the court held claims of outrageous conduct and negligence were preempted because the CBA defined the duty purportedly breached, and the claims were "not sufficiently independent of the terms of the CBA." 684 F. Supp. 2d 985, 988 (M.D. Tenn. 2010). Again, here, the common law duty to exercise due care exists independent of the CBAs and, therefore, may be adjudicated without substantial reliance on the CBAs' provisions.

9

NFL Defendants also rely on *Sherwin v. Indianapolis Colts, Inc.*, in which the court held tort claims against team doctors were preempted because the CBA established the doctors' duties to provide medical care, and the claims were "substantially dependent upon analysis" of the CBA. 752 F. Supp. 1172, 1177 (N.D.N.Y. 1990). Here, however, the CBAs fail to define the Spotter Program or the common law duty. Therefore, the claims may be adjudicated without substantial reliance on the CBAs.

In the Court's own independent research, it uncovered a Ninth Circuit case, *Dent v. National Football League*, which appears to be on point. 902 F.3d 1109 (9th Cir. 2018). That court held the CBAs' provisions at issue there imposed duties on the individual NFL teams, rather than the NFL as a whole. *Id.* at 1121.

Here, most of the "Player Medical Care Provisions" listed by the NFL Defendants concern the NFL teams' obligations, as opposed to those of the NFL Defendants. NFL Defendants' Response at 12-14. "But the *teams'* obligations under the CBAs are irrelevant to the question of whether the *NFL* breached an obligation to [Adams] by violating the law." *Id*. Adams, as the master of his complaint, has brought his claims against the NFL, rather than the individual NFL teams.

In sum, Adams alleges only ordinary duties, as opposed to duties arising from the CBAs. And, as the Court stated before, his claims are neither "substantially dependent" nor "inextricably intertwined" with the CBAs. *Allis-Chalmers*, 471 U.S. at 220.

It would be too much of a stretch for this Court to say Adams's lawsuit concerns any dispute over the meaning or application of the contract terms in the CBAs at issue here. There is only a hypothetical connection at best. Accordingly, preemption is inapplicable.

For all these reasons, the Court concludes federal question jurisdiction in this case is "doubtful" such that the case must be remanded for lack of subject-matter jurisdiction. *Mulcahey*, 29 F.3d at 151.

Given this determination is dispositive, it is unnecessary for the Court to discuss the parties' remaining arguments. *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 348 (2022) (Roberts, C. J., concurring in judgment) ("If it is not necessary to decide more to dispose of a case, then it is necessary not to decide more."); *see also Karsten v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest dicta.").

V.    **CONCLUSION**

It is, therefore, the judgment of the Court Adams's motion to remand is **GRANTED**, and the motions to dismiss filed by NFL Defendants and SCSU are necessarily **DEEMED AS MOOT**.

**IT IS SO ORDERED.**

Signed this 31st day of March 2025, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE